FLORENCE MEYER *v.* NORTHERN INDIANA PUBLIC
SERVICE COMPANY.

[No. 1070S237. Filed October 18, 1972.
Rehearing denied December 14, 1972.]

*Duane W. Hartman, Glenn J. Tabor, Blachly, Tabor &
Bozik,* of Valparaiso, for appellant.

*William H. Eichhorn, Schroer, Eichhorn & Morrow,* of
Hammond, for appellee.

OPINION GRANTING PETITION FOR REHEARING

PRENTICE, J.—Our prior decision and opinion reversing the
trial court was handed down on February 16, 1972 and ap-
pears in 257 Ind. 670, 278 N. E. 2d 561. Our re-examination of
the record, in light of the petition and all briefs, discloses that
our earlier reversal and order for a new trial were improvi-
dently granted. Accordingly, Appellee's petition for rehearing
is granted; and our decision and opinion of February 16, 1972
is, hereby, set aside.

Appellee has heretofore filed its alternative motion to dis-
miss this appeal or affirm the interlocutory order of the trial

court, contending that this appeal presents the same issue previously determined in the first appeal. In the final analysis, there may be merit to this contention, but we believe that there are sufficient differences in the manner in which the issue arises to warrant a review upon the merits. The motion, therefore, is denied.

The appellant's argument is divided into three parts, but the theme of each, in essence, is the same, and that is that the trial court erred in permitting the appellee to condemn an easement 150 feet in width across her land, in view of undisputed evidence that it had previously acquired a strip of land approximately 100 feet in width contiguous to the easement sought from the appellant and further undisputed evidence that the purpose for which the easement was sought required a width of but 150 feet.

This is the second appeal between the same parties in the same cause. Prior to trial from which the first appeal was taken, the appellee determined that it needed a right-of-way across an extensive area of northern Indiana, for the construction of power lines. Portions of such right-of-way were acquired by purchase and others had to be condemned. Among the condemnees were the appellant, Florence Bas and one George Dzur. The widths of the right-of-way sought from Bas varied from 89.02 feet to 152 feet, and the width of the right-of-way sought from Dzur was 200 feet. At the hearing, it was shown that the appellee intended to utilize the rights-of-way for two power lines, one designated a 345 KV line requiring a width of 150 feet and one designated a 138 KV line, requiring a width of 50 feet. It was clear from the evidence, however, that there was an immediately foreseeable need for only the 345 KV line; but the trial judge, nevertheless, entered an order permitting a "take" of the entire widths sought. On appeal, the two cases were consolidated, as they involved the same issues. It should be noted at this point, however, that the Bas lands and the Dzur lands are not contiguous. On May 8, 1970 we

reversed in both cases, holding that the appellee could condemn only for an immediately foreseeable need and only so much as was necessary therefor, in this case a width of 150 feet. The cases are reported at 258 N. E. 2d 57, and our holding and order are quoted as follows:

"* * * However, in the case at bar we are not quarreling with the purposes stated by the appellee or the amount of land needed to accomplish these purposes. In fact, we accept their statements in this regard. It is shown by their own statements, No. 1 that their present need is for 150 feet to erect a 345 KV transmission line; No. 2 at some time in the future they may need a 138 KV line for which they will need another 50 feet.

"The question thus in this case is not a question of a degree of necessity to accomplish the purposes of the appellee in providing for its immediate needs and needs in the reasonably foreseeable future, but this is a question of whether there is any necessity whatever to justify the taking of the additional 50 feet for the prospective 138 KV line. We hold that the facts in this case demonstrate that there is no such necessity and that the taking in this case insofar as it exceeds 150 feet is unauthorized and is, therefore, unlawful. Nichols on Eminent Domain, § 4.11 [3], page 572.

"The trial court is, therefore, reversed, and the cause remanded for further proceedings not inconsistent with this opinion."

When the case at bar went back to the trial court, the complaint and the order of taking were amended to reduce the widths of the easements to 150 feet. At this point, the appellant was granted leave to introduce additional evidence to show that the appellee had acquired other land contiguous to the right-of-way sought which, when combined with the right-of-way sought, would give the appellee a total width in excess of 150 feet. Appellant introduced evidence that is not disputed that in December 1968 and in February 1969 (approximately six months prior to the first trial) the appellee did purchase three strips of land, all contiguous to and north of the right-of-way sought from the appellant. These strips

vary in width but appear to run from 100 to 120 feet, thus giving the appellant a total width, at this particular location, of approximately 250 feet to 270 feet when combined with the right-of-way sought. Further, the appellant introduced a letter from the appellee to a Mr. Truitt, the person from whom one of such strips of land aforesaid had been purchased, which letter was dated three months prior to the conveyance, and offered to purchase the easement. The last paragraph of this letter advised that if the offer was not accepted within fifteen days, it would be necessary for the appellee to institute condemnation proceedings. The appellant has labeled the acquisition of these parcels a "scheme" to use its power of eminent domain to obtain a right-of-way to which it was not entitled. The appellee countered with evidence to show that although, with the easement sought, it would have a total width in excess of 250 feet, it was at all times contemplated that the 345 KV line should and would be placed upon the southerly 150 feet thereof. The transcript is replete with testimony concerning the plans, propriety and necessity of so locating the 345 KV line and that to locate it otherwise would be more expensive, put jogs in the line, create crossover problems in relation to other lines and be generally unsound engineering.

The aforesaid plan of locating the 345 KV line upon the southerly 150 feet is also borne out by the evidence in the Dzur trial which was before us on the first appeal. This makes it clear to us, as it must have been to the trial judge, that the concept of planning the 345 KV line upon such portion was not an idea that occurred to the utility company to abuse its powers of eminent domain and by such scheme acquire a right-of-way to which it was not entitled.

Our determination of this appeal is controlled by *Wampler* v. *Trustee of Indiana University* (1961), 241 Ind. 449, 172 N. E. 2d 67. In that case, the University sought to condemn land for a dormitory parking lot. The landowner resisted upon the basis that it was not necessary

to appropriate his land and that the University sought to condemn more land than it needed, because sufficient parking space could be provided by utilizing available land in the area already owned by it. The trial court denied the "take" but we reversed saying at page 454, "* * * Consequently appellants here cannot show in defense of the present proceedings that a quantity of land less than that described in the complaint would suffice, or that the University owned other land which might have been converted to parking space instead of appropriating appellants' land for such use." This decision followed several earlier Indiana cases there cited and Nichols on Eminent Domain. Having the requisite necessity to authorize condemnation for one use, we know of no reason why a utility company may not acquire contiguous land, by purchase, for some other use, present or future, certain or uncertain, and business prudence may require as much.

The appellant has placed great emphasis upon her assertion that the appellee made its acquisition from the contiguous owner, Truitt, under threat of condemnation. We do not agree that the evidence compels this conclusion. True, the letter offering to purchase a right-of-way indicated that condemnation proceedings would be commenced if the offer were refused. This is the only evidence of any threat of condemnation, and it preceded the conveyance by three months. We do not think that such evidence would compel the trial judge to find that the sale was made under threat. There is an even greater reason, however, why we are not persuaded by appellant's argument that the Truitt land was obtained under threat of condemnation. Assuming, arguendo, such to be the case, it is immaterial to the issues here, since Mr. Truitt is not a party to this litigation. We, of course, could not condone such an abuse of the power of eminent domain but relief therefrom, if appropriate, would be confined to the injured party.

On February 16, 1972, we also handed down a decision in related cases reported at 278 N. E. 2d 563 holding that where

a condemnation order with respect to a right-of-way was reversed upon the ground that the need for a portion of such right-of-way was speculative, the condemnor, before proceeding to take upon an amended complaint seeking a right-of-way over a lesser area than before, was obliged to make an offer to purchase with respect to that sought under the amended complaint and to show that there had been a failure of agreement. Although the record discloses no such offer and failure with respect to the amended complaint herein, that question has not been raised and is, therefore, waived. The judgment of the trial court is affirmed, and it is directed to proceed to trial upon the issue of Appellant's damages.

DeBruler and Hunter, JJ., concur; Givan, J., dissents with opinion in which Arterburn, C.J., concurs.

## DISSENTING OPINION

GIVAN, J.—I dissent from the majority opinion on the petition for rehearing in this case and would adhere to our original opinion handed down February 16, 1972, and published in 278 N. E. 2d 561.

The majority opinion on the petition for rehearing states that even if they assume the right-of-way owned by Northern Indiana Public Service Company on the Truitt property was purchased under threat of condemnation for the same project as the right-of-way proposed to be condemned across the Meyer property, that it is immaterial to the issues in this case because Mr. Truitt is not a party to this litigation. I fail to see any logic to this observation. The question is not whether Mr. Truitt is a party but whether or not Northern Indiana Public Service Company under threat of condemnation has already acquired a substantial portion of the right-of-way needed at this particular location for this project. The facts in this case clearly disclose this to be the case.

The additional facts recited by the majority on this petition for rehearing that it will be inconvenient for Northern Indiana

Public Service Company to change its plans and place the power line on the Truitt property rather than on the Meyer property is not a proper judicial consideration. If Northern Indiana Public Service Company has erred in the amount of right-of-way it has acquired or is attempting to acquire in this particular location, this Court is not justified in imposing a servitude contrary to the fundamental law of condemnation on the Meyer property in order to extricate Northern Indiana Public Service Company from its error.

Arterburn, C.J., concurs.

NOTE.—Reported in 287 N. E. 2d 882.